IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| FILBERTO TORRES, | ) | No. C 05-1633 MJJ (PR) |
| Petitioner, | ) ) | **ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS** |
| v. | ) ) | |
| J. SOLIS, | ) ) | |
| Respondent. | ) ) | |

Filberto Torres ("petitioner"), California prisoner incarcerated at the California Training Facility Soledad, filed the above-titled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging a 2002 decision by the California Board of Parole Hearings ("Board")[1] to deny him parole. Respondent has filed an answer, and petitioner has filed a traverse.

## BACKGROUND

A jury in Los Angeles County Superior Court found petitioner guilty of attempted murder in 1982. The trial court sentenced him to a term of sixteen years to life in state prison. In 2002, after petitioner had served twenty years in prison, the Board found petitioner unsuitable for parole for a ninth time, and set a subsequent parole hearing for one year later. Petitioner challenged this decision in habeas petitions filed in all three levels of the California courts.

---

[1] At the time of the decision, the Board was called the California Board of Prison Terms.

Petitioner then filed the instant petition claiming, as he did in his state habeas petitions, that the Board's decision violates his liberty interest in being released on parole, an interest protected by the federal constitutional right to due process. The record indicates, and petitioner does not dispute, that he was provided with an opportunity to be heard at the parole hearing, that counsel was present, and that he was informed in what respects he fell short of being found suitable for parole. (See Resp. Ex. 5.) Rather, petitioner claims that his right to due process was violated because the denial of parole was not supported by any reliable evidence.

## DISCUSSION

**A.   Standard of Review**

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgement of a State court only on the ground that he is in custody in violation of the Constitution or the laws or treaties of the United States." 28 U.S.C. § 2254(a); Rose v. Hodges, 423 U.S. 19, 21 (1975). Under AEDPA, this Court may grant a petition challenging a state conviction or sentence on the basis of a claim that was "adjudicated on the merits" in state court only if the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412 (2000).

A state court decision is "contrary to" clearly established United States Supreme Court precedent "if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases, 'or if it confronts a set of facts that are materially indistinguishable from a decision'" of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. Early v. Packer, 537 U.S. 3, 8 (2002) (quoting Williams, 529 U.S. at 405-06). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the

Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Williams, 529 U.S. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court may also grant the writ if it concludes that the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); Rice v. Collins, 126 S. Ct. 969, 975 (2006).

B.   Legal Claims

Petitioner argues that the Board's denial of parole violated his due process rights because the decision finding him unsuitable was not supported by the evidence. A parole board's decision satisfies the requirements of due process if "some evidence" supports the decision. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1128-29 (9th Cir. 2006) (adopting some evidence standard for disciplinary hearings outlined in Superintendent v. Hill, 472 U.S. 445, 454-55 (1985)); see also Irons v. Carey, 479 F.3d 658 (9th Cir. 2007).[2] The standard of "some evidence" is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced. See Hill, 472 U.S. at 455. An examination of the entire record is not required nor is an independent assessment of the credibility of witnesses or weighing of the evidence. Id. The relevant question is whether there is any evidence in the record that could support the conclusion reached by the [administrative] board. See id. Additionally, the evidence underlying the Board's decision must have some indicia of reliability. McQuillion v. Duncan, 306 F.3d 895, 904 (9th Cir. 2002).

In assessing whether or not there is "some evidence" supporting the Board's denial of

---

[2]Respondent argues that the Ninth Circuit is wrong in finding Hill's "some evidence" requirement applicable to parole denials. This Court may not disregard or overrule the Ninth Circuit.

3

parole, this Court must consider the regulations which guide the Board in making its parole suitability determinations. California Code of Regulations, title 15, section 2402(a) states that "[t]he panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." The regulations direct the Board to consider "all relevant, reliable information available." Cal. Code of Regs., tit. 15, § 2402(b). Further, they list sets of circumstances tending to indicate whether or not an inmate is suitable for parole. Cal. Code of Regs., tit. 15, § 2402(c)-(d).

The circumstances tending to show an inmate's unsuitability are: (1) the commitment offense was committed in an "especially heinous, atrocious or cruel manner;" (2) previous record of violence; (3) unstable social history; (4) sadistic sexual offenses; (5) psychological factors such as a "lengthy history of severe mental problems related to the offense;" and (6) prison misconduct. Cal. Code of Regs.,tit. 15, § 2402(c). The circumstances tending to show suitability are: (1) no juvenile record; (2) stable social history; (3) signs of remorse; (4) commitment offense was committed as a result of stress which built up over time; (5) Battered Woman Syndrome; (6) lack of criminal history; (7) age is such that it reduces the possibility of recidivism; (8) plans for future including development of marketable skills; and (9) institutional activities that indicate ability to function within the law. Cal. Code of Regs., tit. 15, § 2402(d). These circumstances are meant to serve as "general guidelines," giving the Board latitude in the weighing of the importance of the combination of factors present in each particular case. Cal. Code of Regs., tit. 15, § 2404(c).

Once the prisoner has been found suitable for parole, the regulations set forth a matrix to set a base term. 15 Cal. Code Regs. § 2403(a). The matrix provides three choices of suggested base terms for several categories of crimes: for second degree murders, the matrix of base terms ranges from the low of 15, 16, or 17 years, to a high of 19, 20 or 21 years, depending on certain facts of the crime. Id. at § 2403. One axis of the matrix concerns the relationship between murderer and victim and the other axis of the matrix concerns the

circumstances of the murder.  The choices on the axis for the relationship of murderer and victim are "participating victim," "prior relationship," "no prior relationship," and "threat to public order or murder for hire."  The choices on the axis for the circumstances of the murder are "indirect," "direct or victim contribution," "severe trauma," or "torture."  Each of the choices are further defined in the matrix.  See 15 Cal. Code Regs. § 2403(c).

The California Supreme Court has found that the foregoing statutory scheme places individual suitability for parole above a prisoner's expectancy in early setting of a fixed date designed to ensure term uniformity.  In re Dannenberg, 34 Cal. 4th 1061, 1070-71 (2005).

> While subdivision (a) of section 3041 states that indeterminate life (i.e., life-maximum) sentences should "normally" receive "uniform" parole dates for similar crimes, subdivision (b) provides that this policy applies "*unless* [the Board] determines" that a release date cannot presently be set because the particular offender's crime and/or criminal history raises "*public safety*" concerns requiring further indefinite incarceration. (Italics added.) Nothing in the statute states or suggests that the Board must evaluate the case under standards of term uniformity before exercising its authority to deny a parole date on the grounds the particular offender's criminality presents a *continuing public danger*.

Id. at 1070 (emphasis, brackets, and parentheses as in original).  In sum, "the Board, exercising its traditional broad discretion, may protect public safety in each discrete case by considering the dangerous implications of a life-maximum prisoner's crime individually." Id. at 1071.  The California Supreme Court's determination of state law is binding in this federal habeas action.  Hicks v. Feiock, 485 U.S. 624, 629 (1988).

In this case, the Board found that petitioner was not suitable for parole because the commitment offense was "carried out in an especially cruel and callous manner," petitioner lacked "realistic parole plans," and the District Attorney opposed parole.  (Resp. Ex. 5 at 35-37.)

  A. Commitment Offense

Under state law, the Board may determine that the commitment offense was "especially heinous, atrocious and callous," and thus serve as a basis for denying parole pursuant to California Penal Code § 3041(b), based on the following factors: (1) multiple victims were attacked, injured or killed; (2) the offense was carried out in a dispassionate and

5

calculated manner, such as an execution-style murder; (3) the victim was abused, defiled, or mutilated; (4) the offense was carried out in a manner demonstrating an exceptionally callous disregard for human suffering; (5) or the motive for the crime is inexplicable or very trivial in relation to the offense.  15 Cal. Code Regs, § 2402(c)(1).

The California Supreme Court also has determined that the facts of the crime can alone support a sentence longer than the statutory minimum even if everything else about the prisoner is laudable.  "While the board must point to factors beyond the minimum elements of the crime for which the inmate was committed, it need engage in no further comparative analysis before concluding that the particular facts of the offense make it unsafe, at that time, to fix a date for the prisoner's release."  Dannenberg, 34 Cal. 4th at 1071; see also In re Rosenkrantz, 29 Cal. 4th 616, 682-83 (2002) ("The nature of the prisoner's offense, alone, can constitute a sufficient basis for denying parole" but might violate due process "where no circumstances of the offense reasonably could be considered more aggravated or violent than the minimum necessary to sustain a conviction for that offense.").  Moreover, the federal constitutional guarantee of due process does not preclude the parole board from relying on unchanging factors such as the circumstances of the commitment offense or the parole applicant's pre-offense behavior in determining parole suitability.  Sass, 491 F.3d at 1129 (commitment offenses in combination with prior offenses provided "some evidence" to support denial of parole); Irons, 479 F.3d at 660, 665 (finding commitment offense and prior offenses amounted to "some evidence" to deny parole) .

The facts of petitioner's crime were summarized in a report to the Board as follows:[3]

**Offense Summary:**  At approximately 0:300 A.M. on 11/28/80 at the Northeast corner of Seventh and Alvarado Streets, Torres was arrested by Los Angeles Police Officers for the murder of Ricardo Velasquez.

Patrolling officers were traveling north bound on Alvarado Street when they observed Torres and Velasquez near a public telephone booth at the Northeast corner of Alvarado Street.  The pair seemed to be in conversation, but then Velasquez began to quickly back away from Torres in a defensive manner.  Torres was making punching motions towards Velasquez's chest while

---

[3]These facts are included in the "Life Prisoner Evaluation Report" submitted to the Board, and are not disputed by petitioner herein.  (Resp. Ex. 6.)

6

> Velasquez appeared to be fending off the blows. Velasquez tripped over a fire hydrant and fell on his back in the street. Torres then straddled Velasquez on the street and plunged an eight (blade) butcher knife several times into Velasquez's chest area. The officers stopped the attack and took Torres into custody at gun point. An officer tried to render first aid, but without success. An ambulance arrived and Velasquez was pronounced dead at 0410 A.M.
>
> Torres was interviewed by police on 11/28/80 and stated he asked Velasquez to call a friend for him (via pay phone). Velasquez dialed the wrong number which angered Torres and fight resulted. Torres acknowledged he had the knife in his pants, took it out, and "did it to him (Velasquez)". Torres also stated during the interview that he did not know Velasquez and had never seen Velasquez prior to the incident.
>
> **Prisoner's Version:** Torres states he was intoxicated from beer, tequila and marijuana at the time of the offense. He states he had been drinking for many hours prior to the offense. Torres states Velasquez and he talked; Torres gave him a beer and Velasquez threw it in his face. They then argued. Torres told him to go away. Velasquez then swore at Torres and punched him in the face. Torres states they were both drunk and Torres does not remember stabbing him. "I blacked out from too much drink." Torres states he is sorry the incident happened.

(Resp. Ex. 6 at 1-2; see also Resp. Ex. 5 at 9-10at 2-4.)

The foregoing facts of the offense provided sufficient evidence that petitioner demonstrated an "exceptionally callous disregard for human suffering" under Cal. Code of Regs., tit. 15, § 2402(c)(1)(C). After the victim had fallen to the ground, petitioner continued to attack him, straddled him, and stabbed him in the chest with a butcher knife. The attack was stopped by police officers, not by petitioner himself. Furthermore, murdering the victim because he had dialed the wrong number, or perhaps had struck petitioner once in the face, was certainly a trivial motive compared to the gravity of the offense, see Cal. Code of Regs., tit. 15, § 2402(c)(1)(E). Consequently, there was "some evidence" that the facts of the commitment offense met the factors set forth in the state's regulations for indicating that petitioner was not suitable for parole.[4]

---

[4]The Court is aware of the concern expressed by the Ninth Circuit in Biggs, that "over time" the Board's "continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment" would "raise serious questions involving his liberty interest in parole." 334 F.3d at 916. However, the Ninth Circuit has recently criticized this statement as beyond the scope of the dispute before the court: "Under AEDPA it is not our function to speculate about how future parole hearings could proceed." Sass, 461 F.3d at 1129. Moreover, although the Board's denial of parole may have been in large part based upon Petitioner's commitment offense, there were other

### B. Additional Factors

Under the pertinent regulations, the Board may consider whether the inmate had an "unstable social history" in reaching its parole decision. See 15 Cal. Code Regs. §§ 2402(c)(3); 2402(d)(6). Petitioner had previously been convicted, in 1973, of driving under the influence, and had also been arrested in 1974 and 1977 for driving under the influence and obstructing justice. (Resp. Ex. 6 at 2; Ex. 5 at 11, 36.) As noted above, there was also undisputed evidence that at the time of the offense, petitioner had been using marijuana and was intoxicated. This constituted "some evidence" of an unstable social history.

Petitioner cites his completion of self-help, educational and vocational training programs in prison, his positive evaluation by a psychologist, and the fact that his last serious disciplinary violation in prison was in 1989. The Board commended petitioner for these accomplishments, but also found petitioner had no "realistic" parole or educational plans either in this country or in Mexico (petitioner's country of origin), (Resp. Ex. 5 at 21-22, 37-38.) See 15 Cal. Code Regs. § 2402(d)(8) (allowing consideration of parole plans following release in making parole determination). Although petitioner had vocational and educational skills, he had no plans for housing, employment, or other means to support himself after his release from prison. Finally, the Board noted the prosecution's opposition to parole as a factor in its decision. See Cal. Pen. Code. § 3042.

Under these circumstances, the facts of the commitment offense and petitioner's lack of parole plans was enough evidence to satisfy Hill's standard of "some evidence". As a result, the Board's decision did not violate Petitioner's due process rights in denying him parole. Consequently, neither the Board's decision nor the state court opinions upholding such decision, are "contrary to" or an "unreasonable application of "clearly established Federal law" withing the meaning of 28 U.S.C. § 2254(d)(1). Further, the decision was not based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," because there was "some evidence" in the record to support the

reasons for their denial of parole as well. Therefore, the instant case does not implicate the concerns raised in Biggs.

8

finding of Petitioner's unsuitability for parole. 28 U.S.C. § 2254(d)(2).

Accordingly, petitioner is not entitled to habeas relief.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.

The Clerk shall close the file.

IT IS SO ORDERED.

DATED:   7/10/2007

_____
MARTIN J. JENKINS
United States District Judge